# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRADLEY SCOTT BRYAN,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:16-cv-02987 AC<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34, and for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f.[1]

For the reasons that follow, the court will grant plaintiff's motion for summary judgment, deny the Commissioner's cross-motion for summary judgment, and remand this matter for further

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability. 42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986). SSI is paid to financially needy disabled persons. 42 U.S.C. § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 *et seq.*, is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels . . .").

1

consideration. The Administrative Law Judge ("ALJ") erred by rejecting the opinion of Michelenda Regazzi, Ph.D., the examining doctor who opined on plaintiff's mental impairments. However, because the Vocational Expert ("VE") was never asked a hypothetical that incorporated Dr. Regazzi's opinions, the ALJ must have an opportunity to reexamine plaintiff's residual functional capacity ("RFC") and the availability of jobs given his RFC.

## I. PROCEDURAL BACKGROUND

Plaintiff applied for disability insurance benefits and for supplemental security income on June 14, 2013. Administrative Record ("AR") 18.[2] The disability onset date for both applications was alleged to be November 9, 2012. Id. The applications were disapproved initially on June 14, 2013, and on reconsideration on March 5, 2014. Id. On May 13, 2015, ALJ L. Kalei Fong presided over the hearing on plaintiff's challenge to the disapprovals. AR 32-59 (transcript). Plaintiff, who was present and testified at the hearing, was represented by attorney Joseph Fraulob. AR 32. Also testifying was James Graham, VE. Id.

On June 8, 2014, the ALJ found plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 15-27 (decision). On October 28, 2016, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-4 (decision).

Plaintiff filed this action on December 22, 2016. ECF No. 1; see 42 U.S.C. §§ 405(g), 1383c(3). The parties consented to the jurisdiction of the magistrate judge. ECF Nos. 8, 9. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 19 (plaintiff's summary judgment motion), 24 (Commissioner's summary judgment motion).

////
////

---

[2] The AR is electronically filed at ECF Nos. 13-1 to 13-10 (AR 1-503). The paper version is lodged with the Clerk of the Court. ECF No. 13.

## II. FACTUAL BACKGROUND

Plaintiff was born on November 2, 1966, and accordingly was 46 years old on the alleged disability onset date, making plaintiff a "younger person" under the regulations, when he filed his applications. AR 35; 172 see 20 C.F.R. §§ 404.1563(c) ("Younger person"), 416.963(c) (same). Plaintiff has an 11th grade education, which is a "limited" education under the regulations. AR 36; see 20 C.F.R. §§ 404.1564(b)(3) (education as a vocational factor), 416.964(b)(3) (same).

## III. LEGAL STANDARDS

"[A] federal court's review of Social Security determinations is quite limited." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015). The Commissioner's decision that a claimant is not disabled will be upheld "unless it contains legal error or is not supported by substantial evidence." Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive….'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

"'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." Garrison, 759 F.3d at 1009. "While inferences from the record can constitute substantial evidence, only those reasonably drawn from the record will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation and internal quotation marks omitted).

It is the ALJ's responsibility "to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." Brown-Hunter, 806 F.3d at 492 (internal quotation marks omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). Thus, in reviewing the Commissioner's decision, this court does not substitute its discretion for that of the Commissioner. See Brown-Hunter, 806 F.3d at 492 ("[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency") (internal quotation marks omitted).

The court may review "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Garrison, 759 F.3d at 1010. Finally, the court will not reverse the Commissioner's decision if it is based on "harmless error," meaning that the error "is inconsequential to the ultimate nondisability determination...." Brown-Hunter, 806 F.3d at 492 (internal quotation marks omitted).

## IV. RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 402(d)(1)(B)(ii) (DIB), 1381a (SSI). Plaintiff is "disabled" if he is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment….'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b) and 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id., §§ 404.1520(a)(4)(ii), (c) and 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id., §§ 404.1520(a)(4)(iii), (d) and 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id., §§ 404.1520(a)(4)(iv), (e), (f) and 416.920(a)(4)(iv), (e), (f).

4

Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id., §§ 404.1520(a)(4)(v), (g) and 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V.  THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2014.
>
> 2. [Step 1] The claimant has not engaged in substantial gainful activity since October 10, 2013, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. [Step 2] The claimant has the following severe impairments: anxiety disorder; depressive disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. [Step 4] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can understand simple instructions and perform detailed and complex tasks. He can have occasional contact with coworkers and supervisors and no public contact. Jobs should be fairly routine and repetitive, with no changes in the work routine, and should not be stressful or require a competitive environment or fast pace.
>
> 6. [Step 5] The claimant is capable of performing past relevant work as an industrial cleaner. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the
Social Security Act, from October 10, 2013, through the date of this
decision (20 CFR 404.1520(f) and 416.920(f)).

AR 20-27.

As noted, the ALJ concluded that plaintiff was "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 27.

## VI. ANALYSIS

Plaintiff alleges that the ALJ erred by failing "to provide clear and convincing reasons for rejecting" (1) the opinion of plaintiff's examining psychologist, Michelina Regazzi, Ph.D.; and (2) plaintiff's testimony. AR 19 at 8, 10. Plaintiff requests that the matter be reversed and remanded to the Commissioner for an immediate calculation of benefits. Id. at 14. The Commissioner, in turn, argues that the ALJ's findings are supported by substantial evidence and free from reversible legal error. ECF No. 24 at 19.

### A. The Medical Evidence Before the ALJ

The Ninth Circuit distinguishes "among the opinions of three types of physicians: (1) those who treat the claimant (treating physician); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996). Accordingly, "the opinion of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician." Ghanim v. Colvin, 763 F.3d 1154, 1160 (9th Cir. 2014) (citing Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c)). Similar to the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990). And even if contradicted by another doctor, the ALJ must provide "specific, legitimate reasons based on substantial evidence" for rejecting the opinion of a treating doctor and

6

examining doctor. Andrew v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). In general, "conflicts in the evidence are to be resolved by the Secretary and that his determination must be upheld when the evidence is susceptible to one or more rational interpretations." Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987) (citation omitted).

In this case, the ALJ considered the opinions of three mental health professionals, including claimant's examining physician. The opinions of two non-examining psychologists, Heather Barrons, Psy.D., and L. Colsky, M.D., were given great weight. AR 25. Both Dr. Barrons and Dr. Colsky opined, in relevant part, that claimant's "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without a reasonable number and length of rest periods" were all "moderately limited." AR 69, 97. Examining physician Michelina Regazzi, Ph.D., found claimant's impairments to be more severe.[3]

Dr. Regazzi performed a comprehensive psychological evaluation on November 5, 2013. AR 368-374. Dr. Regazzi diagnosed plaintiff with a "depressive disorder" and "antisocial and borderline personality features." AR 373. Dr. Regazzi observed during the examination, claimant had "maintained an irritable look on his face. He spoke rapidly. His behavior was somewhat impulsive." AR 370. As to work-related abilities, Dr. Regazzi opined, among other things, that the claimant was not "significantly limited" with regard to simple, detailed and complex instructions, nor in "maintaining attention and concentration" and that claimant's pace and persistence was not "significantly limited" or "decreased." AR 374. However, Dr. Regazzi opined that "claimant's ability to interact with the public, supervisors, and coworkers is moderately limited." AR 374. Dr. Regazzi further opined that "claimant's ability to carry out a

---

[3] Plaintiff argues the ALJ was required to apply the "clear and convincing standard" due to the uncontradicted opinion of Dr. Regazzi. ECF No. 19 at 8-9. However, the Commissioner is correct that the ALJ is only required to provide "specific and legitimate based on substantial evidence" in this case. ECF No 24 at 12. Dr. Regazzi's opinion relating to plaintiff's "markedly impaired" ability to carry out a normal work day and workweek was contradicted by the State agency opinions which noted plaintiff was only "moderately limited" in this area. AR 69, 97. Accordingly, the question for this court is whether the ALJ identified "specific and legitimate" reasons for rejecting Dr. Regazzi's opinion.

normal workday/workweek without interruption from psychiatric symptoms is markedly impaired […] based on his report of having daily depression and anger." AR 374. The ALJ gave this opinion "little weight." AR 25.

The ALJ gave "little weight" to Dr. Regazzi's opinion regarding plaintiff's mental limitations on the ground that the opinion "overstates the claimant's limitations regarding his ability to complete a normal workday and workweek." AR 25.

    B.  <u>The ALJ's Reasons for Giving Dr. Regazzi's Opinion "Little Weight"</u>

The ALJ gave three reasons for according "little weight" to Dr. Regazzi's opinion: (1) plaintiff had engaged in "outdoor activities such as walking, basketball, fishing, and moving his step-father's lawn during the relevant period"; (2) plaintiff did not appear to be "nervous while testifying" before the ALJ; and (3) the plaintiff "often appeared euthymic during examinations." AR 25-26.

The ALJ's descriptions of plaintiff's ability to engage in outdoor activities and his "euthymic" appearance during examinations mischaracterize the record. Although plaintiff would play basketball, he testified he would do so "early in the morning [] before people g[o]t up" so that he could "shoot hoops" by himself. AR 41-42. He had not done so "in a long time" due to his depression and inability to leave his room. AR 41-42. The treatment records also show that at one point plaintiff had stated he would attempt to engage in fishing and mowing for the purpose of overcoming his anxiety and fears. AR 413, 447. For these reasons, substantial evidence does not support the ALJ's finding that plaintiff's outdoor activities were inconsistent with Dr. Regazzi's opinion.

Additionally, the Sutter Yuba Mental Health records show that plaintiff's "euthymic" appearances were noted during "medication management" appointments. Plaintiff was also being prescribed various medications for his impairments for anxiety and depression during these

////

////

////

////

appointments. These medications included Risperdal[4], AR 446, 449, Celexa[5] (which had been increased at the appointment), AR 448, and Prazosin[6] (which had been increased at the appointment), AR 449. This course of psychopharmacological treatment is consistent with the reports of plaintiff's therapist, which consistently noted plaintiff's "sad," "tearful at times" "anxious" demeanors. AR 445-450. When discussing mental health issues, "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." Garrison, 759 F.3d at 1017 (citing Holohan, 246 F.3d at 1205 (quotations omitted). Moreover, "[r]eports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms." Garrison, 759 F3d at 1017 (citing Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1200 (9th Cir. 2008) (quotations omitted). The ALJ's passing reference to plaintiff's "euthymic" appearance at unspecified mental status examinations does not constitute a specific and legitimate reason, supported by substantial evidence in the record, to accord little weight to Dr. Regazzi's opinion.

Finally, the ALJ relied on his own observation that plaintiff was able to testify without appearing "nervous." AR 25. While the Ninth Circuit has "disapproved of so-called 'sit and squirm' jurisprudence," "the inclusion of the ALJ's personal observations does not render the decision improper." Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (internal citations and quotation marks omitted). However, "[t]he ALJ's observations of a claimant's functioning may not form the sole basis for discrediting a person's testimony." Orn v. Astrue, 495 F.3d 625,

---

[4] Risperdal "is used to treat schizophrenia, bipolar disorder, or irritability associated with autistic disorder." https://www.mayoclinic.org/drugs-supplements/risperidone-oral-route/description/drg-20067189 (last visited by the court on February 28, 2018).
[5] Celexa "is used to treat depression." https://www.mayoclinic.org/drugs-supplements/citalopram-oral-route/description/drg-20062980 (last visited by the court on February 28, 2018).
[6] Prazosin can be used to treat post-traumatic stress disorder by reducing nightmares and anxiety. https://www.webmd.com/a-to-z-guides/prazosin-for-ptsd (last visited by the court on February 28, 2018).

9

639 (9th Cir. 2007). Here, because plaintiff's outdoor activities and intermittent euthymic presentation are not supported by substantial evidence, the ALJ's personal observation of plaintiff's testimonial composure is the only remaining reason for his rejection of the treating doctor's opinion. It is an insufficient basis.

Moreover, the transcript of the hearing is not entirely consistent with a finding that plaintiff was not nervous. Indeed, the ALJ noted plaintiff's anxious appearance at various times during the hearing. At one point the ALJ commented that plaintiff had begun to cry. AR 51. When asked if this happens at other times, plaintiff testified that he cries "[u]ncontrollably" for no reason, "several times a day." AR 51-52. The ALJ also remarked on plaintiff's panic attack that occurred in the waiting room, prior to the hearing. AR 52-53. Plaintiff testified that he had to sit in a different room because the waiting room made him anxious and it "felt like everybody was staring at [him]." AR 52-53. Because the court finds that the ALJ's other reasons for rejecting Dr. Regazzi's opinion are unsupported by substantial evidence, the ALJ's personal observations of plaintiff are an improper basis for rejecting the opinion. This conclusion is reinforced by the fact that the record does not substantially support the finding that the plaintiff's presentation at the hearing was inconsistent with Dr. Regazzi's opinion.

C. Harmless Error Analysis

The ALJ found plaintiff's RFC as follows: "the claimant can understand simple instructions and perform detailed and complex tasks. He can have occasional contact with coworkers and supervisors and no public contact. Jobs should be fairly routine and repetitive, with no changes in the work routine, and should not be stressful or require a competitive environment or fast pace." AR 22. Although the RFC contains some restrictions based upon plaintiff's mental impairments, the court is unable to say that the ALJ's error is harmless. Dr. Regazzi's restriction relating to plaintiff's ability to carry out a normal workday/workweek without interruption could well further restrict, or even eliminate entirely, the jobs that plaintiff can perform. See AR 58 (VE testifies that if an individual would be off task due to mental impairments two hours in a day or missed two or more days a month, there would be no jobs available).

10

VII. REMAND FOR BENEFITS OR FOR FURTHER PROCEEDINGS

As discussed above, the ALJ erred in rejecting Dr. Regazzi's opinion and that error was not harmless. Accordingly, the court is authorized "to 'revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.'" Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014). "[W]here the record has been developed fully and further administrative proceedings would sever no useful purpose, the district court should remand for an immediate award of benefits." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2000).

More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. Benecke, 379 F.3d at 593 (citing Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000)).

Under the second step in the remand analysis,[7] the court must "review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2016) (quoting Treichler, 775 F.3d at 1101). Under the third step in this analysis, the court should remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014) (internal quotation marks omitted). In this case, even when Dr. Regazzi's opinion is credited, the record is ambiguous about whether plaintiff can perform the job identified by the VE.

Because the ALJ did not propose Dr. Regazzi's limitations to the VE, nor incorporate

---

[7] As discussed above, the first step is satisfied because the ALJ failed to provide legally sufficient reasons for rejecting Dr. Regazzi's opinion.

11

them in the RFC, the court does not know if those limitations would eliminate all jobs that plaintiff could perform. Moreover, plaintiff's trial counsel proposed hypotheticals to the VE that incorporated various limitations; it is unclear whether those included Dr. Regazzi's limitations as well. The ALJ must have the opportunity to make this determination in the first instance. The matter will accordingly be remanded for further proceedings.

## VII. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 19), is GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 24), is DENIED;

3. This matter is REMANDED to the Commissioner for further proceedings consistent with this opinion; and

4. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

DATED: March 14, 2018

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE